**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| **National Police Association, Inc.**; **Joseph J. Swantack, Jr.**, an individual; and **Christine M. Swantack**, an individual, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> **New Albany Park Condominium Association Board of Directors**; and **Lifestyle Property Management, Ltd.**, <br><br> *Defendants.* | **Case No.: 2:22-cv-02130-SDM-EPD** <br><br> **District Judge: Sarah D. Morrison** <br> **Magistrate Judge: Elizabeth Preston Deavers** |

<u>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**</u>

Pursuant to 27 U.S.C. § 122a and Federal Rule of Civil Procedure 65, Plaintiffs **National Police Association, Inc.**, **Joseph J. Swantack, Jr.**, and **Christine M. Swantack** respectfully move this Court to issue a preliminary injunction enjoining Defendants **New Albany Park Condominium Board of Directors** and **Lifestyle Property Management, Ltd.** from enforcing the unconstitutional provision Article IX, Section 9.15 of the New Albany Park Community Guidelines Handbook, which prohibits NPA and the Swantacks from displaying the "Thin Blue Line" flag in violation of Plaintiffs' First Amendment rights to freedoms of speech and expression, and enjoining Defendants from any acts of retaliation or further wrongdoing. A memorandum in support of the motion follows.

**WHEREFORE**, Plaintiffs pray this Court GRANT Plaintiffs' Motion for Preliminary Injunction enjoining Defendants from (1) enforcing Article IX, Section 9.15 of the New Albany

Park Community Guidelines Handbook, which prohibits NPA and the Swantacks from

displaying the "Thin Blue Line" flag at their residence, and (2) enjoining Defendants from any

acts of retaliation.


May 31, 2022                              Respectfully submitted,

                                         James Bopp Jr, IN Bar No. 2838-84*
                                         jboppjr@aol.com
                                         *Lead Counsel for Plaintiffs*
                                         /s/ Melena S. Siebert
                                         Melena S. Siebert, OH Bar No. 96946
                                         msiebert@bopplaw.com
                                         *Trial Attorney for Plaintiffs*
                                         Cassandra Dougherty, CA Bar No. 336487**
                                         cdougherty@bopplaw.com
                                         *Counsel for Plaintiffs*
                                         THE BOPP LAW FIRM, PC
                                         1 South 6th Street
                                         Terra Haute, Indiana 47807
                                         Telephone: (812) 232-2434
                                         *Pro hac vice admission granted
                                         ** Pro hac vice application forthcoming

## MEMORANDUM IN SUPPORT OF MOTION OF PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiffs National Police Association, Inc., Joseph J. Swantack, Jr., and Christine M. Swantack (collectively, "**Owners**") bring this action under the First Amendment to the United States Constitution, which prohibits abridgement of the freedoms of speech and expression, to enjoin Defendants New Albany Park Condominium Board of Directors and Lifestyle Property Management, Ltd. (collectively, "**HOA**") from prohibiting Owners from displaying the "Thin Blue Line" flag in violation of their First Amendment rights to freedoms of speech and expression. A preliminary injunction is necessary to stop the unlawful suppression of Owners' First Amendment rights by the HOA.

Under Federal Rule of Civil Procedure 65, a court may grant a party injunctive relief where (1) the movant has shown a strong likelihood of success on the merits; (2) the movant will suffer irreparable harm if the injunction is not issued; (3) the balance of the equities tips in favor of the moving party; and (4) the public interest would be served by issuing the injunction.

Owners are likely to succeed on the merits in this case because HOA's shifting of fees under Ohio statute and threat of judicial enforcement brings HOA's action into the ambit of the First Amendment. HOA's continued conduct in prohibiting Plaintiffs' from flying the "Thin Blue Line" flag also causes irreparable harm to Owners. In addition, it deprives Owners of their First Amendment right to freedom of speech. Owners cannot seek monetary damages to compensate for these injuries. A preliminary injunction is the only recourse to prevent irreparable harm.

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

Furthermore, the issuance of a preliminary injunction will not harm other parties. HOA has no legally-cognizable interest in continuing to prohibit Owners from flying the "Thin Blue Line" flag. Finally, a preliminary injunction will benefit the public by ensuring that the First Amendment is effectively enforced.

Owners exceed the requirements for a preliminary injunction enjoining HOA from enforcing Article IX, Section 9.15, of the New Albany Park Community Guidelines Handbook ("**Guidelines**") and enjoining HOA from any acts of retaliation or further wrongdoing. To curtail HOA' unlawful suppression of Owners' First Amendment rights, the Court should grant Owners' Motion for a Preliminary Injunction.

## II. STATEMENT OF FACTS

Owners Joseph J. Swantack, Jr. and Christine M. Swantack have owned and resided in a condominium in the New Albany Condominium Park since approximately February of 2019. *See* Exhibit 1, a true and correct copy the Declaration of Christine M. Swantack ("**C. Swantack Decl.**") at ¶ 5; *See* Exhibit 2, a true and correct copy the Declaration of Joseph J. Swantack, Jr. ("**J. Swantack Decl.**") at ¶ 5. On or about August of 2020, the Swantacks began flying a "Thin Blue Line" flag from the front porch of their private residence in the New Albany Condominium Park.[1] *See* C. Swantack Decl. at ¶ 6; J. Swantack Decl. at ¶ 6.

---

[1]According to the"Thin Blue Line" website, "[t]he 'Thin Blue Line' American flag represents law enforcement and is flown to show support for the men and women who put their lives on the line every day to protect us. This flag is a sign for promoting compassion and support for our nation's police officers." The "Thin Blue Line" Flag is an otherwise black and white American flag with a single blue stripe located just below the star. Thin Blue Line USA,

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

4

The Swantacks chose to fly the "Thin Blue Line" flag outside of their private residence as an expression of their patriotism and their gratitude toward and honor for law enforcement. *See* C. Swantack Decl. at ¶ 7; J. Swantack Decl. at ¶ 7. Specifically, Mrs. Swantack served as a hospital corpsman in the United States Navy and was on active duty from 1981 to 1986 and reserve from 1986 to 1992. *See* C. Swantack Decl. at ¶ 8. Mr. Swantack, Jr. intermittently contracts in a civilian capacity with the United States Department of Defense. *See* J. Swantack Decl. at ¶ 8. His grandfather and father served in the United States military during World Wars I and II, respectively. *See* J. Swantack Decl. at ¶ 9.

NPA is a registered 501(c)(3) educational organization incorporated in Indiana whose mission is to educate supporters of law enforcement in how to aid police departments in accomplishing their public service goals. *See* Exhibit 3, a true and correct copy the Declaration of Ed Hutchinson ("**Hutchinson Decl.**") at ¶ 5. NPA is the owner of the "Thin Blue Line" flag ("**the Flag**") that the Swantacks wish to fly outside of their New Albany Park residence. *See* Hutchinson Decl. at ¶ 6.

**A.       Notice of Violation and Demand Letter from the Board and LPM**

On or about July 16, 2020, the Swantacks received a notice of violation from Defendant Lifestyle Property Management, Ltd. ("**LPM**") on behalf of Defendant New Albany Park Condominium Association Board of Directors ("**the Board**") advising that the Flag was not an

---

https://www.thinbluelineusa.com/blogs/thin blue line blog/what is the thin blue line (last visited May 24, 2022).

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

"approved" flag and citing Article IX, Section 9.15 of the New Albany Park Condominium Association rules and regulations.[2] *See* C. Swantack Decl. at ¶ 9, Exhibits A-B; J. Swantack Decl. at ¶ 10, Exhibits A-B.

On or about August 30, 2021, on behalf of the Board, LPM sent the Swantacks a second notice of violation. LPM informed that a $50.00 enforcement assessment was charged to the Swantacks' account and that continued "violation" could result in loss of amenity access and/or legal action, but that the Swantacks had the "right to a hearing with the Board of Directors and Management" if they disputed the violation. *See* C. Swantack Decl. at ¶ 10, Exhibit C; J. Swantack Decl. at ¶ 11, Exhibit C.

On or about September 2, 2021, Brad J. Terman, counsel for LPM, sent a demand letter to the Swantacks advising that the Flag should be removed immediately, or HOA would proceed with legal action against the Swantacks. *See* C. Swantack Decl. at ¶ 11, Exhibit D; J. Swantack Decl. at ¶ 12, Exhibit D ("the Association will be forced to proceed with formal action to enforce the Decl. and rules.")

On or about September 17, 2021, on behalf of the New Albany Park Condominium Association, LPM sent the Swantacks a third notice of violation. LPM noted that a $100.00 enforcement assessment was charged to the Swantacks account but added that the Swantacks

---

[2] The Notice and subsequent notices were signed "On Behalf of New Albany Park Condominium, Lifestyle Communities." Plaintiffs originally named "Lifestyle Communities, Ltd." in this lawsuit, but on May 25, 2022, Defendants' counsel notified Plaintiffs' counsel that Defendant Lifestyle Communities, Ltd. was misnamed. Plaintiffs subsequently filed an amended complaint to name "Lifestyle Property Management, Ltd."

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

were entitled to a hearing with the Board. *See* C. Swantack Decl. at ¶ 12, Exhibit E; J. Swantack

Decl. at ¶ 13, Exhibit E.

On or about October 11, 2021, on behalf of the New Albany Park Condominium

Association, LPM sent the Swantacks a notification of an unpaid balance of $635.00. *See* C.

Swantack Decl. at ¶ 13, Exhibit F; J. Swantack Decl. at ¶ 14, Exhibit F.

**B.      The Swantacks' Request for a Meeting with the Board**

On or about October 11, 2021, Mrs. Swantack emailed Cody Curtis, LPM Associations

Manager, to request copies of the demand letter and any other relevant documentation in the

possession of the Board which referenced the Swantacks' flying the Flag at their private

residence. Mrs. Swantack advised Mr. Curtis that she was available to meet with the Board on

October 18, 2021, in advance of the regularly scheduled Board meeting. *See* C. Swantack Decl.

at ¶ 14, Exhibit G.

On or about October 12, 2021, Mr. Curtis emailed Mrs. Swantack and advised that the

Board was unavailable to meet with the Swantacks on October 18, 2021, and that he would add

the matter to the Executive Board meeting agenda to determine the availability of the Board to

meet with the Swantacks. Mr. Curtis also stated that all correspondence and documentation had

been previously sent directly to the Swantacks. *See* C. Swantack Decl. at ¶ 15, Exhibit G.

On or about October 12, 2021, Mrs. Swantack requested an immediate stay on all pending

and future "enforcement assessments" and "imposition of legal fees" until the Swantacks could

virtually or physically meet with the Board. Mrs. Swantack also requested copies of invoices

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

from LPM's legal counsel. *See* C. Swantack Decl. at ¶ 16, Exhibit G.

On or about October 20, 2021, in an effort to avoid the previously threatened legal action

and any additional charges assessed or shifted to the Swantacks' account, Mr. Swantack emailed

LPM and the Board the following:

> This memo serves as advising you that Mrs. Christine Swantack, and I, will pay
> the accumulated fines and legal assessments that have been assessed and imposed
> on us, here at our residence [address redacted] by the end of the month [October]
> and that the 'Thin Blue Line' flag has been taken down. But, if Mrs. Swantack
> and I learn that we have a legal right to display the "Thin Blue Line" flag in the
> future, we will place the flag back.

> *See* J. Swantack Decl. at ¶ 15, Exhibit G.

On or about October 20, 2021, Mr. Curtis acknowledged receipt of this message and

advised that recent legal fees (of which the Swantacks had no prior knowledge) from

communications between HOA' legal team and a local news station would also be charged to the

Swantacks' account. *See* J. Swantack Decl. at ¶ 16, Exhibit G.

On or about November 5, 2021, Mr. Curtis emailed the Swantacks a statement dated

November 5, 2021, which included a legal charge for expenses totaling $967.50, and a charge

totaling $112.50. The period for each charge indicated "FLAG ENFORCEMENT" and "FLAG

ENFORCEMENT 8.2.2021" respectively. *See* C. Swantack Decl. at ¶ 17, Exhibit H; J. Swantack

Decl. at ¶ 17, Exhibit H. These legal expenses were assessed under Ohio Rev. Code §

5311.19(A), which permits fee-shifting when a homeowners' association seeks to commence a

civil action for damages violation of the association's bylaws or guidelines.

Enclosed with the statement were two letters addressed to the New Albany Park

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

**8**

Condominium Association from Williams & Strohm, LLC, attorneys at law. The letters (dated

August 2, 2021, and November 1, 2021) included a redacted breakdown of the legal expenses

charged to the Swantacks, including a conferencing regarding "Joseph Swantack violation and

options for proceeding," emailing the Swantacks and NPA, addressing media inquiries, and

drafting a complaint for injunctive and monetary relief. *See* C. Swantack Decl. at ¶ 18, Exhibit I;

J. Swantack Decl. at ¶ 18, Exhibit I.

 NPA and the Swantacks wish for the Swantacks to fly the Flag owned by NPA outside of

their private residence. *See* C. Swantack Decl. at ¶ 19; J. Swantack Decl. at ¶ 19;  Hutchinson

Decl. at ¶ 7. The HOA's assessment of legal fees in accordance with the Ohio Code and threats

of judicial enforcement of the Guidelines effectively prevented Swantacks flying the Flag, owned

by NPA, violating their right to freedom of speech. NPA and the Swantacks are suffering

irreparable harm in not being permitted to exercise their First Amendment rights to freedom of

expression, and there is no adequate remedy at law for this constitutional violation.

### III. ARGUMENT

Federal Rule of Civil Procedure 65 permits a District Court to issue a preliminary

injunction upon notice to the adverse party. A preliminary injunction is warranted where the

moving party has shown that: (1) it is likely to succeed on the merits of its claim; (2) it is likely

to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of the

equities tips in favor of the moving party; and (4) an injunction is in the public interest.

*Overstreet v. Lexington-Fayette Urban County Government Eyeglasses*, 305 F.3d 566, 573 (6th

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

Cir. 2002). These are factors to be balanced, and are not prerequisites for an injunction. *National Viatical, Inc. v. Universal Settlements Intern., Inc.*, 716 F.3d 952, 956 (6th Cir. 2013); *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998).

A preliminary injunction is warranted and necessary to prevent the HOA's ongoing unconstitutional suppression of Owners' First Amendment rights to freedom of speech. In this case, all four factors support the issuance of a preliminary injunction. First, Owners are likely to prevail on the merits. The First Amendment prohibits other government entities and actors from "abridging the freedom of speech." U.S. Const. amend. I; *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017). Judicial enforcement of the HOA Guidelines constitutes state action and is therefore subject to constitutional claims. *See* Part III.A. The HOA is suppressing Owners' right to exercise their freedom of speech by penalizing Owners for flying the Flag as an expression of their support for law enforcement.

Second, Owners cannot recover monetary damages from HOA. Owners can demonstrate that denial of the injunction will cause irreparable harm as Owners' claim is based upon a violation of Owners' constitutional rights. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm) (citations omitted). Therefore, Owners will suffer an irreparable injury each day that Owners are not able to fly the Flag and an immediate injunction is required to prevent further suppression of Owners' First Amendment rights. Given the lack of

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

available monetary compensation for these continuing damages, Owners will suffer irreparable

harm in the absence of such an injunction.

Third, the issuance of an injunction will not harm others. HOA will not suffer any

legally-cognizable harm because they have no right to suppress Owners' First Amendment rights.

Fourth, the issuance of an injunction will serve the public interest as "it is always in the

public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v.*

*Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

Given all four preliminary injunction factors weigh in favor of issuing an injunction,

Owners are entitled to a preliminary injunction against HOA.

**A.      Owners are likely to prevail on the merits because the restrictive covenant constitutes state action in the ambit of the First Amendment.**

Given HOA's violation of Owners' First Amendment rights, Owners exceed the threshold

required to establish a likelihood of success on the merits of this case. In order to establish a

likelihood of success on the merits, "it is ordinarily sufficient if the plaintiff has raised questions

going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground

for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v.*

*Cafcomp Sys.*, 119 F.3d 393, 402 (6th Cir.1997). In this instance, Owners' evidence does more

than raise questions about whether HOA has violated the Constitution; rather, the evidence

establishes that HOA has violated Owners' First Amendment rights and will likely continue to do

so absent an injunction.

The First Amendment prohibits abridgement of the freedoms of speech and expression

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

and is applied to the States through the Fourteenth Amendment. The right to the freedom of speech under the First Amendment is not only secure from interference by governmental or public bodies, but under certain circumstances from interference by private actors as well. In cases in which restrictive covenants prevent homeowners from exercising their right to free speech, judicial enforcement of such covenants alone would constitute state action so as to bring the covenants into the ambit of the First Amendment. *See Lamprecht v. Tiara at the Abbey Homeowners Association*, No. 12 JE CC0027, 2013 WL 6144144 (Mo. Cir. Oct. 3, 2013); *see also Gerber v. Longboat Harbour N. Condo., Inc.*, 724 F. Supp. 884, 885 (M.D. Fla. 1989), order vacated in part on reconsideration, 757 F. Supp. 1339 (M.D. Fla. 1991) (court found state action by virtue of judicial enforcement of private agreements contained in a Decl. of a condominium.)

By even greater force of logic, where there is both a threat of judicial enforcement of a condominium's Guidelines and a statute enforcing compliance with those Guidelines and shifting costs for noncompliance, the Guidelines are thereby brought into the ambit of the First Amendment. The Supreme Court has held that in the context of civil actions involving private parties and common law claims that "the application of state rules in state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991). Where state rules are applied in state courts in a manner which restricts First Amendment freedoms, there is action sufficient "to constitute 'state action' for purposes of the Fourteenth Amendment." *Bd. of Managers of Old Colony Village Condominium v. Preu*, 80 Mass.App.Ct. 728, 732 (2011).

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

When legal action is threatened or brought claiming that breach of such private covenants entitles a party to shift its costs under state statute, the restrictions are subject to scrutiny under the First Amendment. *Preu*, *supra*, 80 Mass.App.Ct. at 733. Ohio Revised Code Section 5311.19(A) permits this shift in costs and provides the following:

> All unit owners, their tenants, all persons lawfully in possession and control of any part of a condominium property, and the unit owners association of a condominium property shall comply with all covenants, conditions, and restrictions set forth in a deed to which they are subject or in the declaration, the bylaws, or the rules of the unit owners association, as lawfully amended. Violations of those covenants, conditions, or restrictions shall be grounds for the unit owners association or any unit owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.

"State action. . . refers to exertions of state power in all forms." *Shelley v. Kraemer*, 68 S.Ct. 836, 844 (1948) "The action of state courts and of judicial officers in their official capacities is to be regarded as action of the state within the Fourteenth Amendment." *Id*; *See State ex rel. Curd v. Backhaus*, 56 Ohio App.2d 79, 81 (8th Dist.1977) ("The condominium act itself . . . provides that actions for damages or injunctive relief may be brought by the unit owners' association and/or one or more unit owners for any violation of deed provisions, the declaration, bylaws, or administrative rules and regulations."). Judicial enforcement of such restrictions constitutes state action and is therefore subject to constitutional claims.

Because HOA threatened legal action and judicial enforcement by the state court and shifted attorneys' fees to the Swantacks following threat of legal action, the restriction is subject to scrutiny under the First Amendment.

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

**1.       The content-based restriction on political speech is unconstitutional.**

In determining what level of scrutiny to use under the First Amendment, courts look to whether the restriction is "content-based." Restriction of speech is "content-based" if it is adopted because of disagreement with the message the speech conveys. *Bays v. City of Fairborn*, 668 F.3d 814, 821 (6th Cir. 2012.) Because political speech is inherently "content-based," laws that burden political speech are subject to strict scrutiny, which requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011).

In the context of covenants enacted by homeowner's associations, the rights of homeowners to display a political sign such as a flag should be balanced against the property rights of a homeowners' association to ascertain whether a restriction is reasonable and enforceable. *See For a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n*, 929 A.2d 1060 (N.J. 2007); *see also Mazdabrook Commons Homeowners' Ass'n v. Khan*, 46 A.3d 507, 522 (N.J. 2012) (because a homeowners' association covenant that banned all signs except for "for sale signs" was unreasonable and violated the state constitution, "the covenant that memorializes it is unenforceable."). "[R]esidential signs have long been an important and distinct medium of expression 'a venerable means of communication that is both unique and important." *City of Ladue v. Gilleo*, 512 U.S. 43, 54-55 (1994)). Allowing private residents to display signs or flags outside of their home is important for the additional reason of the precise location; they connect the message directly to the speaker. *Id*.

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

The First Amendment's protections are at its broadest when considering political dialogue. *See Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308 (1957) ("(T)o assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people,"); *Mills v. Alabama*, 86 S.Ct. 1434, 1437 (1966); "(T)here is practically universal agreement that a major purpose of (the First) Amendment was to protect the free discussion of governmental affairs."

HOA's prohibition on all flags that could be viewed as "political" constitutes a content restriction on "political flags." HOA thereby must prove that the restriction furthers a compelling interest.

Homeowners' associations generally have latitude to enforce restrictions enacted for the purpose of maintaining property value. However, that calculation requires a level of objective reasoning and courts have found there is no objective connection between banning signs and property values. In *Cleveland Area Bd. of Realtors v. City of Euclid*, the court found that sign ordinances banning signs on homeowners' lawns did not advance interest in property values so as to justify restriction on First Amendment rights where it was unclear whether concern over property values was a substantial interest justifying restriction of speech, and there was no demonstration that appreciation rates and prices of homes in the area were related to presence or absence of lawn signs. U.S. Const. amend. 1; *Cleveland Area Bd. of Realtors v. City of Euclid*, 33 F. Supp. 1253, 1262 (N.D. Ohio 1993).

Here, the Flag does not impact a third party's property value. Merely wishing to avoid the

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

controversy that the Flag and others like it might raise is not a reason to violate an individual's First Amendment rights. Thus, there is not a reasonable nexus between property values and political flags sufficient to impinge on Owners' constitutional rights.

The HOA's content-based prohibition on political speech, via banning flags with political messages, is unconstitutional. HOA infringed on the Swantacks' right to freedom of speech and expression in first restricting them from displaying their own "Thin Blue Line" flag and subsequently from preventing them from flying the Flag given to them by NPA to fly when legally permitted. Plaintiff's evidence does not merely establish a possibility of success on the merits or raise a question going to the merits—it establishes a strong probability of success on the merits which supports the issuance of a preliminary injunction.

**B.      Owners will suffer irreparable injury in the absence of an injunction because owners will be deprived of their First Amendment rights.**

In the absence of a preliminary injunction, the Owners will suffer irreparable harm to their ability to exercise their First Amendment rights to freedom of expression. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir.2002), citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992).

The Supreme Court and the Sixth Circuit repeatedly have held that infringement of First Amendment freedoms constitutes irreparable injury; that alone justifies a preliminary injunction. *See, e.g.*, *Connection Distrib.*, 154 F.3d at 288 (the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury" (quotation omitted)). In

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

this case, however, Owners have suffered much more than a technical violation of their rights.

HOA prohibited Owners' political speech—flying the Flag—that lies at the core of First Amendment. Residential signs are a valuable and distinct medium of expression and allowing private residents to display signs or flags outside of their home is important as the location connects the message directly to the speaker. *See*, *supra*, Part III.A.

Owners cannot be compensated by money damages for their injures. Therefore, if HOA is not enjoined from continuing to violate Owners' First Amendment rights, Owners will continue to suffer irreparable injury. The necessity of preventing this irreparable injury merits the issuance of a preliminary injunction against HOA.

**C.      The issuance of a preliminary injunction will not harm others.**

In contrast to Owners' immediate and irreparable injury, HOA will suffer no injury if it is prevented from enforcing the Guideline which prohibits Owners from displaying the Flag. HOA has no legally-cognizable interest in continuing to prohibit Owners from flying the Flag. An injunction against this covenant would not require the HOA to act—it would instead prevent them from acting in a manner that violates the U.S. Constitution.

Under these circumstances, the balance of equities strongly weighs toward the conclusion that HOA should be enjoined from enforcing the flag provision of the Guidelines. The absence of any substantial harm to HOA or third parties weighs heavily in favor of granting a preliminary injunction.

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

**D.      Upholding constitutional rights always serves the public interest.**

The injunction to preserve Owners' constitutional rights serves the public because "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). In particular, "[v]indicating First Amendment freedoms is clearly in the public interest," *Pac. Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1237 (10th Cir. 2005), because "[d]iscussion of public issues" is "integral to the operation of the system of government established by our Constitution," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); see also *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (describing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"). The preliminary injunction will serve the public interest in upholding the constitutional right to freedom of expression.

## IV. CONCLUSION

Owners have ample evidence that HOA has violated Owners' First Amendment rights. Unless this Court enjoins the HOA from prohibiting Owners from flying the Flag, this bold and emblazoned conduct will continue unabated, and Owners will continue to suffer irreparable harm. Owners are thereby entitled to a preliminary injunction.

Based on the foregoing, Owners respectfully request a preliminary injunction (1) enjoining HOA from enforcing the provision in Article IX, Section 9.15, of the New Albany Park Community Guidelines Handbook which prohibits the flying of the "Thin Blue Line" flag; and (2) enjoining HOA from any acts of retaliation or further wrongdoing.

**Plaintiffs' Memorandum In Support of**
**Motion for Preliminary Injunction**

May 31, 2022                                  Respectfully submitted,

                                             James Bopp Jr, IN Bar No. 2838-84*
                                             jboppjr@aol.com
                                             *Lead Counsel for Plaintiffs*
                                             /s/ Melena S. Siebert
                                             Melena S. Siebert, OH Bar No. 96946
                                             msiebert@bopplaw.com
                                             *Trial Attorney for Plaintiffs*
                                             Cassandra Dougherty, CA Bar No. 336487**
                                             cdougherty@bopplaw.com
                                             *Counsel for Plaintiffs*
                                             THE BOPP LAW FIRM, PC
                                             1 South 6th Street
                                             Terra Haute, Indiana 47807
                                             Telephone: (812) 232-2434
                                             *Pro hac vice admission granted
                                             ** Pro hac vice application forthcoming

**Plaintiffs' Memorandum In Support of
Motion for Preliminary Injunction**

**Certificate of Service**


I hereby certify that the foregoing and all attachments thereto, were served upon

Defendants' counsel, via FedEx, and via email at the following address:


Mr. Patrick Kasson
Ms. Mrinali Sethi
Reminger Co., LPA
200 Civic Center Dr., Ste. 800
Columbus, OH 43215
PKasson@reminger.com
MSethi@reminger.com


/s/ Melena S. Siebert
Trial Attorney for Plaintiffs


**Verified Compl. For
Decl. and Inj. Relief**