UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH J. SWANTACK, JR., *et al.*,

        Plaintiffs,    :    Case No. 2:22cv2130

  - vs -                  Judge Sarah D. Morrison
                         Magistrate Judge Elizabeth P.
NEW ALBANY PARK      Deavers
CONDOMINIUM ASSOCIATION
BOARD OF DIRECTORS,
*et al.*,
                        :

        Defendants.

## OPINION AND ORDER

Plaintiffs Joseph J. Swantack, Jr. and Christine M. Swantack own and reside in a condominium in the New Albany Park Condominium Association in New Albany, Ohio; they seek to fly a "Thin Blue Line" flag[1] outside their condominium as an expression of their patriotism and to show their support and gratitude for law enforcement; the flag is owned by Plaintiff National Police Association, Inc. ("NPA"). Plaintiffs allege that Defendants New Albany Park Condominium Association Board of Directors ("the Board") and Lifestyle Property Management, Ltd. ("LPM") prohibited them from flying their flag.

---

[1]The Thin Blue Line flag resembles an American flag but has a blue stripe—it has been a sign of support for law enforcement but has also come to signal opposition to the racial justice movement. Janelle Griffith, *Police Chief Bans 'Thin Blue Line' Imager, Says its been 'Co-opted' by Extremists*, NBC NEWS, Jan. 29, 2021, https://perma.cc/JN46-QYWK; Tovia Smith, *Thin Blue Line Flags Stir Controversy In Mass. Coastal Community*, NPR, Jul. 31, 2020, https://perma.cc/GQ5J-3572.

The matter is before the Court on three motions. First, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 10.) The Defendants opposed the Motion and, in so doing, filed a Motion for Judgment on the Pleadings. (ECF No. 20.) Those two motions are now fully briefed. (ECF Nos. 24, 28.) Plaintiffs also filed a Motion to Consolidate the Hearing on their Motion for Preliminary Injunction with the Trial on the Merits of their Complaint (ECF No. 11), that motion is also fully briefed. (ECF Nos. 18, 23.)

For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings is **GRANTED**. Accordingly, both of Plaintiffs' motions are **DENIED** as moot.

I.   BACKGROUND

On a Motion for Judgment on the Pleadings, all factual allegations in the complaint are accepted as true but legal conclusions are not. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The following summary is drawn from the factual allegations in the Amended Complaint.

In August 2020, the Swantacks began flying a "Thin Blue Line" flag from the front porch of their condominium. (¶ 10.) Shortly after they hung their flag, the Swantacks received a notice from LPM on behalf of New Albany Park Condominium Association that the flag was not "approved" under the Association's rules and regulations. (¶ 15.)

When the Swantacks continued to fly the flag, LPM sent them a second notice of violation, this time informing the Swantacks that a $50.00 enforcement assessment had been charged to their account and that continued violation could

result in the loss of their amenity access and/or legal action. (¶ 16.) The Swantacks were also told that they could dispute the violation by seeking a hearing with the Board and management. (*Id.*)

On September 2, 2021, when the Swantacks still did not take down the flag, LPM's legal counsel sent a letter ordering them to immediately remove the flag or the Association would proceed with legal action against the Swantacks. (¶ 17.) This letter was followed by a third notice of violation from LPM on September 17, 2021. (¶ 18.) At the time of the third notice, a $100.00 enforcement assessment was charged to the Swantacks' account. (*Id.*)

The following month, the Swantacks requested a meeting with the Board and asked for an "immediate stay on all pending and future 'enforcement assessments' and 'imposition of legal fees'" until that meeting could occur. (¶¶ 20-22.) Before a meeting could be scheduled, and in an effort to avoid legal action and additional charges, Mr. Swantack emailed LPM and the Board to tell them that the flag had been removed and that he and his wife would pay the accumulated fines and legal assessments. (¶ 23.) Mr. Swantack said that he would put the flag back up if they learned that they have a legal right to display the flag. (*Id.*) In response to Mr. Swantack's notice, Defendants informed the Swantacks that they owed $1080 for "flag enforcement." (¶ 25.)

Plaintiffs bring one claim under 42 U.S.C. § 1983 for violation of their First Amendment right to freedom of expression. They claim that the Swantacks were prevented from flying NPA's flag, and that the monetary assessment effectively

3

chilled the NPA's and the Swantacks' right to freedom of speech. (¶ 28.) Both the NPA and the Swantacks continue to want the Swantacks to fly the Thin Blue Line flag outside of their residence. (¶ 29.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker*, 539 F.3d at 549. To overcome such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

### B. Legal Standard and Analysis

Defendants move for judgment on the pleadings on several grounds, but the

4

Court need only address their argument that that they are not state actors because that argument is dispositive.

For Plaintiffs' § 1983 claim to succeed, the alleged deprivation of their First Amendment rights must have been caused by state action. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (internal citation and quotations omitted). While private companies are generally considered private actors, Defendants' actions may constitute state action if it is "fairly attributable to the State." *Id.* (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

The Sixth Circuit has outlined four tests "to aid courts in determining whether [challenged actions are] fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (collecting cases). While general rules for the application of these tests can be drawn from caselaw, the ultimate determination of state action is "necessarily [a] fact-bound inquiry." *Lugar*, at 939. "[E]xamples may be the best teachers." *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiffs argue that the public function test applies because Defendants' assessment of penalties and legal expenses in accordance with Ohio Rev. Code 5311.19(A) and their threats of judicial enforcement constituted state action. (ECF No. 24, PageID 402.) Plaintiffs do not argue that Defendants' conduct constituted state action under any other test. Instead, they argue that Defendants' conduct was

5

state action because they could not have acted as they did in the absence of state law. The Court will address each argument in turn.

### 1. Defendants did not perform a public function.

"The public function test 'requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections.'" *Bell v. Mgmt. & Training Corp.*, 122 F. App'x 219, 222 (6th Cir. 2005) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (internal citations omitted). Thus, the emphasis of the public function test is on whether a function is both "traditionally" and "exclusively" reserved to the state.

Using this test, the Supreme Court has found constitutional liability against private entities administering elections, *Terry v. Adams*, 345 U.S. 461 (1953); operating "company towns," *Marsh v. Alabama*, 326 U.S. 501 (1946); and administering private property used for a public purpose, *Evans v. Newton*, 382 U.S. 296 (1966). However, both the Supreme Court and the Sixth Circuit have rejected many other attempts to frame private actions as encroaching on a traditionally exclusive public function. *See Flagg Bros.,* at 158–160 (settlement of disputes between debtor and creditor is not a traditional public function); *San Francisco Arts & Athletics v. U.S. Olympic Committee*, 483 U.S 522 (1987) (regulation of Olympic sports teams by a private organization was not an exclusively public function); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (provision of special education is not an

6

exclusively public function); *Cornett v. Mason Volunteer Fire Co.*, 1996 WL 242035, at *2 (6th Cir. 1996) (firefighting and emergency medical services are not exclusive public functions); *Newsom v. Vanderbilt Univ.*, 653 F.2d 1100 (6th Cir. 1981) (provision of hospital services for the poor was not an exclusive public function). *See also Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011) (provision of transportation services for state-sponsored programs is not an exclusive public function).

Running a condominium association is not a power traditionally or exclusive reserved to the State. So instead, Plaintiffs argue that the Defendants relied on a state statute to force Plaintiffs to take down the "Blue Lives Matter" flag— Defendants "utilize[ed] the alternate enforcement mechanism made available by Ohio Rev. Code § 5311.19(A)." (ECF No. 24, PageID 400). This argument is strained at best. As an initial matter, Ohio Rev. Code § 5311.19(A) does not provide alternative enforcement mechanisms. The only enforcement mechanism made available by that statute is the ability for a condominium owner or tenant to file suit against an owner or tenant who fails to comply with a provision of a deed or rule imposed by the unit owners association. Ohio Rev. Code § 5311.19(A). No such allegation is made here. Instead, Defendants used the threat of judicial enforcement as leverage to obtain enforcement fees from Plaintiffs. This is common tactic in settlement negotiations and is in no way an exclusive or traditional public function.

What is more, even if Defendants had filed suit under Ohio law, a private party seeking to enforce a private contract is also not a power reserved to the State,

7

even if a state statute allows for such enforcement. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 354 (1974) (no state action where a private utility company terminated services pursuant to a state regulatory provision); *Flagg Bros.*, at 149 (no state action where a private actor sold goods entrusted to him for storage, as permitted by self-help provision of the New York Uniform Commercial Code, absent an allegation of the participation of any public official); *see also Bey v. LVN Corp.*, No. 14-13723, 2015 WL 4546752 (E.D. Mich July 28, 2015) (no state action where private mortgage lender engaged in a state-approved foreclosure practices).

Defendants did not perform a public function.

### 2. Defendants' conduct did not otherwise constitute state action.

Plaintiffs remaining argument is, in essence, that Defendants conduct must have been state action because they could not have acted as they did in the absence of state law. This argument is similar to the first half of the state-action test employed in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 622 (1991).

In *Edmonson*, the Supreme Court found that the discriminatory use of preemptory challenges during civil litigation was state action. In doing so, it applied a two-part test: (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority" and (2) whether the challenged conduct, in all fairness, must be treated as governmental in character. *Id.* at 620 (citing *Lugar*, 457 U.S. at 939–42). The Court found that the first prong was easily met because prospective jurors could not have been excluded on the basis of race but for the authority to make peremptory challenges that was

granted by federal law. But this was only half of the analysis. Under the second prong, the Court explained that:

> Although private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action, our cases have found state action when private parties make extensive use of state procedures with the overt, significant assistance of state officials. It cannot be disputed that, without the overt, significant participation of the government, the peremptory challenge system, as well as the jury trial system of which it is a part, simply could not exist.

*Id.* at 622 (internal citations and quotations omitted); *see also, Lugar*, at 939, n.21 ("a private party's mere invocation of state legal procedures" does not make that party a state actor).

Even assuming that Plaintiffs could satisfy the first prong, their argument fails under the second. Defendants did not make extensive use of state procedures—in fact, Plaintiffs allege no use of state procedures at all. To get around this, Plaintiffs argue that Defendants' private enforcement of penalties negated the requirement for judicial intervention.[2] (ECF No. 24, PageID 400.) Not so. Both requirements must be met to establish state action. Defendants' threat of using state procedures and the fact that they imposed a fine that could be the subject of a state court procedures does not make state actors of Defendants.

Even if Defendants had actually filed suit against the Swantacks, as a general principle, the filing of a suit between private parties in state court is not

---

[2]Confusingly, Plaintiffs cite *Shelly v. Kramer*, 334 U.S. 1, 19 (1948) in support of this argument. However, in that case, the Supreme Court found state action precisely because judicial intervention occurred. *See also Edmonson*, 500 U.S. at 622 (citing *Shelley* for the proposition that state action occurs where "the injury caused is aggravated in a unique way by the incidents of governmental authority.").

9

state action. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 354 (1974) (no state action where a private utility company terminated services pursuant to a state regulatory provision); *Revis*, 489 F.3d at 291–92 ("simply invoking or following unchallenged state procedures, even if done in bad faith, does not render . . . private-party defendants state actors,") (citing *Lugar*, 457 U.S. at 941); *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 954 (S.D. Ohio 2010) (Sargus, J.) (use of state courts and laws in foreclosure proceedings does not constitute state action); *Dunwoody v. Homeowners Ass'n, Inc. v. DeKalb Cty., Ga.*, 887 F.2d 1455, 1459, n.4 (11th Cir. 1989) (private litigation is not state action); *Stevens v. Frick*, 372 F.2d 378, 381 (2nd Cir. 1967) (a state "does not clothe persons who use its judicial processes with the authority of the state."); *Fallis v. Dunbar*, 386 F.Supp. 1117, 1120 (N.D. Ohio 1974), *aff'd*, 532 F.2d 1061 (6th Cir. 1976) (filing an eviction action in state court is not state action) (citing *Henry v. First Nat'l Bank*, 444 F.2d 1300 (5th Cir. 1981); *but see Shelly v. Kramer*, 334 U.S. 1 (1948).

On this point, the *Shelley* decision, on which Plaintiffs rely heavily, has limited precedential value. At least one court in our circuit has explicitly limited the application of *Shelley* on the basis that:

> [A] logical extension of the doctrine would result in a federal cause of action existing whenever any state police power is used by private persons where constitutionally protected rights are involved . . .. Such an extension has so great an application to purely private actions as to be overbroad.

*Fallis*, 386 F.Supp. at 1120, *aff'd*, 532 F.2d 1061 (6th Cir. 1976). In addition, the Eleventh Circuit has recognized that the holding in *Shelley* "has not been extended beyond the context of race discrimination" and that, subsequent to *Shelley,* the

10

concept of state action has "been narrowed by the Supreme Court." *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 199 (1988); *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 542–47 (1987); *Flagg Bros.*, 436 U.S. at 164–65).

Further still, *Shelley* is readily distinguishable from the facts of this case. In *Shelley*, the private actor made the state court privy to their discriminatory purpose—the state court in that case knew that the prospective buyer was black and enforced a covenant that was racially restrictive. *Shelley*, 334 U.S. at 6–7. The petitioners there were subject to state court orders divesting them of title in the properties at issue, so the Supreme Court's holding was premised on the idea that the "[p]articipation of the State consists in the *enforcement* of the restrictions . . .." *Id*. at 13 (emphasis added); s*ee also Id*. at 19 ("It is clear that but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint."). There are no allegations of active intervention of the state courts here—Ohio law merely affords condominium associations a method of enforcing their rules and regulations on their residents without inquiring into his motive for doing so.

Defendants made no use of state procedures and received no assistance from state officials, so their conduct was not state action.

Because Plaintiffs have failed to allege state action, Defendant's motion for judgment on the pleadings is **GRANTED**.

11

### III. CONCLUSION

Accordingly, the Motion for Judgment on the Pleadings (ECF No. 20) is **GRANTED**. Plaintiffs' Motion for Preliminary Injunction (ECF No. 10) and Motion to Consolidate (ECF No. 11) are **DENIED** as moot.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**